**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, INC., KIMBERLY KATZ, AND KENNETH PAYNE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No.: _____ |
| v. | ) ) | |
| KANE PROPERTY MANAGEMENT CORP., an Illinois Corporation, BRANDON SHORES CONDOMINIUM ASSOCIATION, an Illinois Corporation, and MARILYNN WHARTON, an Individual, | ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

## COMPLAINT

NOW COME THE PLAINTIFFS, by their attorneys, and complain against the Defendants as follows:

### I.     INTRODUCTION

1.     This action is brought by a Fair Housing organization and a building resident who uses an assistive device for a knee injury, to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act"), 42 U.S.C. §§ 3601-3619.   Kane Property Management Corp. ("Kane Property") and Brandon Shores Condominium Association (the "Association") manage a condominium building located at 6150 N. Kenmore (the "Condominium") in the Edgewater neighborhood of Chicago, Illinois. Although the condominium association owns and/or controls several parking spots, not one parking space is striped or designated for a disabled person requiring handicap accessible

parking.[1]

2.      When residents require handicap accessible parking spots, Defendants refuse to provide reasonable accommodations, and instead require the residents to individually seek out an available and accessible parking space.  Defendants then actively interfere in efforts to reach private agreements for the use of accessible spots, police the parking lot, and prohibit persons with disabilities from parking in the only privately owned spaces suitable for persons with limited mobility who require handicap accessible parking.  As a result, Ms. Katz and other disabled residents and putative residents have been and will be deprived of the ability to purchase, rent and/or fully enjoy a dwelling at the Condominium.  As the Defendants have refused repeated requests for reasonable accommodations, Plaintiffs are seeking temporary and permanent injunctive relief and damages.

## II.      JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(3) and 42 U.S.C. § 3613(1)(a), and supplemental jurisdiction under 28 U.S.C. § 1367.

4.      Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the allegations occurred in the Northern District of Illinois, the subject property is located in this District, and Defendants either reside or do business in this District.

## III.      THE PARTIES

5.      Plaintiff Chicago Lawyers' Committee for Civil Rights Under Law, Inc., ("CLC") is an Illinois Not-For-Profit Corporation with its principal place of business located in Chicago, Illinois.  CLC's primary purpose, as it relates to housing, is to eliminate discrimination and promote fair and equal housing in the Chicago metropolitan area. In support of its efforts to

---

[1] Throughout this complaint, the term "handicap parking" and "accessible parking" will be used interchangeably.  In the same manner, the term "handicapped" and "person with disability" or "disabled" are used interchangeably herein.

promote fair and equal housing, CLC engages in activities to educate tenants, homeowners, landlords, and others about their rights and duties under fair housing and fair lending laws, advocates for progressive laws and public policies, conducts intake, referral, and investigation of housing discrimination complaints, and provides legal representation to individuals and groups in asserting and enforcing their fair housing rights and securing equal housing opportunities.

6. Plaintiff Kimberly Katz is a 49-year-old adult citizen of the United States who co-owns and since 2011 resided in unit 15B of the Brandon Shores Condominium building located at 6150 N. Kenmore, Chicago, Illinois. Ms. Katz is a person with a handicap within the meaning of § 802(h) of the Fair Housing Act, 42 U.S.C. § 3602(h). Ms. Katz has traumatic aggravation of osteoarthritis, an ACL tear, torn meniscus in her right knee, and neuropathic pain syndrome, which severely limits her mobility. It is medically necessary for Ms. Katz to utilize a cane at all times, and sometimes her condition requires the use of crutches, or even a wheelchair.

7. Ms. Katz's condition makes it difficult and dangerous to bend or pivot her knees, maneuver in tight spaces, climb stairs or walk long distances. As a result, Ms. Katz needs access to a wide parking space in order for her to safely enter and exit her car and walk into her condominium building. Ms. Katz has handicap parking plates for her car authorizing her to park in accessible handicap parking spaces. Ms. Katz's doctor has notified the Defendants that she requires a handicap parking space because her condition causes pain, imbalance, weakness, fatigue and limits her mobility.

8. Plaintiff Kenneth Payne is a 47-year-old adult citizen of the United States who is Ms. Katz's life partner. Mr. Payne co-owns and since 2011 resides in unit 15B of the Brandon Shores Condominium building, located at 6150 N. Kenmore, Chicago, Illinois 60660.

9. Defendant Kane Property Management Corp. ("Kane Property") is an Illinois

Limited Liability Corporation with its principal offices at 3420 N. Lake Shore Drive, Suite 16-N, Chicago, Illinois 60657.  Kane Property was responsible for the management of Brandon Shores Condominiums from 2006 through June 30, 2014.

10.     Defendant Brandon Shores Condominium Association (the "Association") is an Illinois Not-for-Profit Corporation located at 6150 N. Kenmore, Chicago, IL 60660.   The Association is responsible for enforcing the Rules and Regulations of the Condominium and is the owner of the common areas of the building.

11.     Defendant Marilynn Wharton is an adult citizen of the United States who owns unit 8A of the Brandon Shores Condominium building located at 6150 N. Kenmore, Chicago, Illinois 60660, and also resides there.   Ms. Wharton was a member of the Brandon Shores Condominium Association Board where she held numerous positions including Board President.

## IV. FACTUAL ALLEGATIONS

12.     Brandon Shores Condominiums is comprised of 56 separately owned condominium units and 69 parking spaces.  Some or all condominium units are deeded with one or more private parking spaces.  Private parking spaces are located in the building's front parking lot and underneath the building in its covered parking garage.  In addition to the deeded parking spaces, the Association owns five guest parking spots that are located next to the private outdoor lot.

13.     On March 15, 2011, Mr. Payne and Ms. Katz bought unit 15B.[2]  The parking spot deeded to unit 15B is #33.  Parking spot #33 is not a designated handicap spot.  Moreover, spot #33 is abutted by a cement wall on one side and a tall gate on the other, leaving insufficient room for a person with physical disability to safely enter or exit a car when parked in the space.

---

[2] Although unit 15B is deeded to Mr. Payne, Ms. Katz provided funds for a portion of the down payment on the property's mortgage and contributes to monthly mortgage payments on the property.

14.     On or about October 2010, Ms. Katz became temporarily disabled when she sustained a knee injury.  On or about January 1, 2012, Ms. Katz became permanently disabled when the boiler located immediately above unit 15B exploded spewing water onto the floor and caused Ms. Katz to slip, fall, and reinjure her knee.[3]

15.     As a result, Ms. Katz was diagnosed with traumatic aggravation of osteoarthritis, an ACL tear, torn meniscus in her right knee, and neuropathic pain syndrome, which left her wheelchair-bound for two months and she now requires the full-time use of an assistive device, including but not limited to a cane or walker, and occasional use of crutches or a wheelchair for stability and mobility support.  In her disabled state, it is impossible for Ms. Katz to safely navigate in and out of her car with an assistive device when it is parked in spot #33.

**A.  Defendants Denied Multiple Requests for Accommodation**

16.     On or about August 3, 2012, Mr. Payne submitted a written request to Kane Property to provide a handicap accessible parking spot to Ms. Katz.  Coupled with his written request, Mr. Payne attached proof of Ms. Katz's disability as issued by the Illinois Secretary of State.

17.     In response this request, Kane Property indicated that it did not have any extra parking spaces to provide.  Instead, Kane Property provided the following options: (1) put a sign up offering to switch parking spaces with someone in the building; (2) offer to rent a spot from someone else in the Association; or (3) park in visitor parking.

18.     As described herein, Ms. Katz made additional requests for accommodations after Defendants' initial refusal to provide a reasonable parking accommodation.  On September 21, 2012, Patty Hildreth, at the time property manager for Kane Property, replied via email to these

---

[3] Ms. Katz and Mr. Payne subsequently filed suit (the "personal injury action") against Brandon Shores for personal injuries sustained as a result of the explosion.

requests as follows: "The inability of Kim to park in the space owned by you is not an association matter. Having a temporary disabled parking permit is not sufficient documentation to qualify as a person with disability under Fair housing guidelines."

19.     Again, on September 27, 2012, Mr. Payne faxed Kane Management side A of a Disability Certification for Plates or Parking Placard completed by Ms. Katz's physician that indicated Ms. Katz's permanent disability to support her request of Defendants for a permanent handicap accessible parking space.

20.     Plaintiff Katz has made numerous additional requests to the Association for a reasonable accommodation, asking it to switch her small deeded parking spot to a larger spot that would accommodate her, or assign to her a guest space.

21.     Further, on June 3, 2014, Plaintiff CLC requested that the Defendants provide a reasonable accommodation to Ms. Katz.  On June 19, 2014 and to date, Defendants have refused to provide a reasonable parking accommodation to Ms. Katz.

**B. Kane Property Only Offered a Temporary Parking Solution**

22.     As a short-term solution, and on the basis of her temporary disability, Kane Property allowed Ms. Katz to park in various vacant parking spots.  In a two-month period from August 3, 2012 through September 10, 2012, Ms. Katz's parking spot changed three times – first to spot #19, then to spot #20, and finally to spot #34.

23.     Spot #34 is deeded to unit 7B.  Prior to September 10, 2012, unit 7B and its deeded spot #34 were vacant.  Spot #34 is identical in size to Ms. Katz's deeded spot #33, except that spot #34 is flanked on both sides by other parking spaces, rather than a cement wall on one side and a tall gate on the other.  Therefore, spot #34 is far easier and safer for Ms. Katz to access than her deeded parking space.

24.     On or about September 10, 2012, Kane Property sent an email to Plaintiff Katz
notifying her that unit 7B had been rented and that the Association would no longer be
responsible for providing alternative parking.  However, based on information and belief, the
renters of unit 7B did not take possession of the unit until on or about November 2013.

25.     On September 14, 2012, Mr. Payne posted a letter in the common area of Brandon
Shores requesting to swap spaces with another tenant and also requested of Defendants that Ms.
Katz continue to use spot #34 until a permanent handicapped parking spot was assigned.

26.     On September 21, 2012, Mr. Payne received an email from Kane Property that
stated:

> The Association allowing Kim to use spot #34 temporarily was not
> related to handicap parking.  Spot #34 was provided as a short-
> term, alternate parking solution when space #20 transferred
> ownership.  The fact that the Association provided you with
> alternate parking in the past does not set precedence in providing
> you with alternate parking in the future… It is your responsibility
> to find alternate parking.

27.     Thereafter, Mr. Payne and Ms. Katz actively sought out tenants with whom to
swap parking spaces, although while unit 7B and spot #34 remained vacant, Ms. Katz routinely
parked in #34.

**C. Defendants Repeatedly Interfered with Ms. Katz's Ability to Access Any
Reasonable Accommodation**

28.     On or about September 24, 2012, Ms. Katz attempted to park in spot #33 – the
parking spot deeded to her condo – however, an unknown car was parked in that space.  Without
an alternative designated parking space, and knowing that it was available, Ms. Katz parked in
spot #34.  The next morning, Ms. Katz returned to find a tow sticker stuck to the drivers' side
window of her car.

29.     On or about October 9, 2012, Ms. Katz filed a complaint with the Department of

Housing and Urban Development ("HUD Complaint"). Shortly after filing the HUD Complaint, an unknown owner of a silver minivan began parking in spot #34, which prevented Ms. Katz from parking in the space. Ms. Katz and Mr. Payne repeatedly asked the Association who owned the silver minivan and requested that the person stop parking in that spot. The Association did not respond to these requests.

30. Based on information and belief, the silver minivan is owned by a Brandon Shores Association board member who does not own unit 7B, yet at the direction of the Board, purposefully and knowingly parked in spot #34 in retaliation for Ms. Katz filing the HUD Complaint. The owner of the silver minivan suddenly stopped parking in spot #34 when HUD began investigating Ms. Katz's claims.

31. Throughout the investigation into the HUD Complaint (from October 2012 through March 2013) and the personal injury action, Ms. Katz parked in spot #34.

32. On December 11, 2013, Ms. Katz received a settlement offer from the Association in the personal injury action. That same day, the Association sent Plaintiff a letter stating that she would no longer be allowed to park in spot #34. The Association also sent tenants of unit 7B ("7B tenants") a letter stating that they could have their original parking spot back, although they had not requested it. Subsequently, the 7B tenants orally agreed to allow Ms. Katz to park in their parking space (#34), as they did not own a car. Until that point, the 7B tenants had been allowing their friend to use the #34 parking space.

33. Between December 11, 2013 and January 15, 2014, Ms. Katz routinely found the Association's President, Marilynn Wharton, standing outside monitoring the parking lot. During this period of time, Ms. Wharton refused to allow Ms. Katz to park in spot #34, despite Ms. Katz's oral agreement with the 7B tenants.

34.     On or about January 15, 2014, Ms. Katz drove into the parking lot and saw the car owned by the friend of the 7B tenants parked in spot #34 and Ms. Wharton standing outside watching.  Ms. Katz approached Ms. Wharton and asked her whether she instructed the 7B tenants to allow their friends to park in spot #34 and interfered with their oral arrangement.  In response, Ms. Wharton answered, "I don't have to answer your questions," and stormed off into the building.

35.     As she entered the building, the 7B tenants passed Ms. Wharton and the three spoke briefly.  When the 7B tenants walked outside and into the parking lot, Ms. Katz asked them whether the car parked in #34 belonged to them, and reminded them of their oral arrangement to switch places.  In response, the 7B tenants stated that they were not allowed to speak with Ms. Katz, and that Ms. Katz would have to speak with Ms. Wharton regarding the parking arrangements.

36.     Ms. Katz also attempted to park in visitor parking, although on or about January 15, 2014, Marva Swanagain, the then-building manager for Kane Property, informed her that she was not allowed to park in visitor parking and if she did, her car would be towed.

37.     As the Defendants refused to allow Ms. Katz to utilize an accessible parking space, actively interfered in her efforts to make private arrangements for an accessible parking space, and prohibited her from parking in the visitors' parking lot, Ms. Katz was forced to park in her assigned spot.  As a result, Ms. Katz fell while trying to enter her car and reinjured herself on or about January 16, 2014.  Defendants' manipulation of available parking spaces has made it virtually impossible for Ms. Katz or other persons with a handicap who rent or own units in Brandon Shores to otherwise obtain access to a handicap parking space or accessible parking and has interfered with Ms. Katz's ability to fully enjoy her dwelling.

**D. Defendants' Failure to Accommodate Plaintiffs Has Resulted in Significant Damages**

38.     Chicago Lawyers' Committee and its Fair Housing Project has been damaged as a result of the above discriminatory acts of Defendants in that:

a.  CLC's time and money has been deflected away from referral, education and other efforts directed against discrimination and towards Defendants' unlawful acts;

b.  CLC's clients have been deprived of the opportunity to reside in housing and fully enjoy the benefits of living in integrated housing because of their disability;

c.  CLC's ability to counsel and place clients has been undermined by Defendants as a result of their discriminatory actions;

d.  CLC's goals, reputation and institutional purpose have been damaged by Defendants' discriminatory practices.

e.  CLC's mission has been frustrated by Defendants perpetuating the very unlawful discrimination that CLC is dedicated to dismantling.

39.     Plaintiff Katz has suffered physical injuries, pain and suffering as a result of the Defendants' actions.  She has had extreme difficulty getting from her car to her condo. She has fallen and almost fallen attempting to get in and out of her car. She has suffered pain and weakness having to walk long distances.

40.     Plaintiffs Katz and Payne have also suffered extreme emotional injury, humiliation, anxiety, embarrassment and inconvenience as a result of the above discriminatory conduct.

41.     Plaintiff Katz has been deprived of the ability to use and enjoy her dwelling in the same manner as non-handicapped individuals, as a result of the Defendants' conduct.

42.     All of the acts set forth above, have been taken by each of the Defendants intentionally, willfully, wantonly and/or with reckless disregard for the rights of the Plaintiffs.

43.     There are numerous reasonable accommodations that one or more of the Defendants can provide, including the following:

    a.  Defendants can designate one or two of the guest parking spaces or other parking spaces that it owns or controls for the purpose of constructing handicap parking for use by Plaintiff Katz and others with a need for such parking.

    b.  Defendants can assign a guest parking space to Plaintiff Katz, in exchange for her deeded parking spot.

    c.  Defendants can stop actively interfering with private arrangements that Plaintiffs Katz and Payne make to accommodate her disability.

    d.  Defendants can purchase parking spaces from unit owners who have no need for the larger/wider parking spots. The Defendants could then make said spaces available for sale or rental to Plaintiff and others with a need for such parking.

    e.  The Association can amend its Bylaws and Articles of Declaration to allow unit owners to sell or exchange parking spaces for handicap parking spaces if residents require them.

    f.  The Defendants can re-measure and restripe the parking areas to create handicap parking spaces.

## COUNT I

### (Against Defendants Kane Property and the Association)

**REFUSAL TO REASONABLY ACCOMMODATE PLAINTIFF KATZ'S HANDICAP**

44.     The failure and refusal of Defendants Kane Property and the Association to

reasonably accommodate Ms. Katz's handicap, as set forth herein, constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(b).

## COUNT II

### (Against Defendants Kane Property, the Association, and Marilynn Wharton)

### UNLAWFUL INTERFERENCE WITH REASONABLE ACCOMMODATION

45.     The acts of Defendants Kane Property, the Association, and Marilynn Wharton to prevent Ms. Katz to access her reasonable accommodation, as set forth herein, constitute coercion, intimidation, threats and interference of the exercise of fair housing rights in violation of 42 U.S.C. § 3617.

## COUNT III

### (Against Defendants Kane Property, the Association, and Marilynn Wharton)

### RETALIATION

46.     The acts of Defendants Kane Property, the Association, and Marilynn Wharton to prevent Ms. Katz from using an accessible parking spot as a result of the complaint filed with the Department of Housing and Urban Development, as set forth herein, constituted unlawful interference with the exercise of fair housing rights in violation of 42 U.S.C. § 3617.

## COUNT IV

### (Against All Defendants)

### DISABILITY DISCRIMINATION IN HOUSING
### UNDER THE ILLINOIS HUMAN RIGHTS ACT 775 ILCS 5/3-101 *et seq*.

47.     Defendants' repeated refusal to provide a reasonable parking accommodation, as set forth herein, constitutes a refusal to make accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity

to use and enjoy a dwelling, in violation of the Illinois Human Rights Act 775 ILCS 5/3-102.1(c)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request as follows:

A. That preliminary and permanent injunctive relief be awarded in favor of the Plaintiffs and against each of the Defendants, prohibiting them for continuing to discriminate against Plaintiffs and others similarly situated and taking other steps to ensure that such discrimination does not occur in the future.

B. That Plaintiff Katz be awarded actual damages to compensate her for the physical injuries that she has suffered resulting from Defendants' conduct.

C. That Plaintiff Katz be awarded actual damages to compensate her for the emotional injuries that she has suffered resulting from Defendants' conduct.

D. That Plaintiff Katz be awarded punitive damages against each Defendant.

E. That Plaintiff Payne be awarded actual damages to compensate him for the emotional injuries that he has suffered resulting from Defendants' conduct.

F. That Plaintiff Payne be awarded punitive damages against each Defendant.

G. That Plaintiff CLC be awarded actual damages to compensate it for its diversion of resources resulting from its investigation and advocacy on behalf of Ms. Katz and others similarly situated at Brandon Shores.

H. That Plaintiff CLC be awarded actual damages to compensate it for frustration of its mission resulting from Defendants' conduct towards Plaintiff Katz and Plaintiff Payne, perpetuating the very unlawful discrimination that CLC is dedicated to dismantling.

I. That Plaintiff CLC be awarded punitive damages against each Defendant.

J.  That Plaintiff Katz be awarded her reasonable attorneys' fees and costs related to the within case.

K.  That Plaintiff Payne be awarded his reasonable attorneys' fees and costs related to the within case.

L.  That Plaintiff CLC be awarded its reasonable attorneys' fees and costs related to the within case.

M.  That this Court expedite discovery.

N.  That this Court grant Plaintiffs such additional relief as it sees fit and just.

### JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: August 22, 2014                    Respectfully submitted,


By: /s/ Casey L. Westover
    Casey L. Westover
    Jillian L. Burstein
    Reed Smith LLP
    10 South Wacker Drive
    Chicago, IL  60606-7507
    Telephone: +1 312 207 1000
    Facsimile: +1 312 207 6400


    Danielle McCain
    Jessica Schneider
    Chicago Lawyers' Committee
    for Civil Rights Under Law, Inc.
    100 N. LaSalle
    Suite 600
    Chicago, IL 60604
    Telephone: +1 312 630 9744
    Facsimile: +1 312 630 1127

    *Counsel for Plaintiffs*